United States Court of Appeals,

Fifth Circuit.

No. 96-20418.

Joseph Charles MATTA, Plaintiff-Appellant,

v.

S. Beville MAY, et al., Defendants,

S. Beville May, Defendant-Appellee.

July 31, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before DAVIS, STEWART and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Joseph Charles Matta ("Matta") appeals from the an order awarding Appellee S. Beville May ("May") $290,262 in attorney fees as a sanction against Matta. We reverse.

FACTS AND PROCEEDINGS BELOW

This action and the related case of *Barnes v. Levitt,* No. H-92-898, arose from Wanderlon Ann Barnes's ("Barnes") employment at the Houston branch office of the Securities and Exchange Commission ("SEC"). Matta supervised Barnes in his capacity as the assistant regional administrator of the SEC. May was the attorney representing Barnes in connection with Barnes's claims of employment discrimination against SEC.

Barnes, an African-American female, worked as an SEC attorney in its Houston office from August 1988 until September 1991. In February 1991 Barnes sought counseling with the SEC's Office of Equal Employment Opportunity ("EEO"). During the initial informal

1

proceedings Barnes raised issues of racial discrimination. Barnes claims, but Matta disputes, that Barnes also alleged gender discrimination and sexual harassment during the informal EEO process. On August 9, 1991 Barnes received a notification of her right to file a formal administrative EEO complaint. Barnes's attorney, May, filed a formal EEO complaint on August 23, 1991 and an amended complaint on September 3, 1991, alleging racially and sexually motivated discrimination, harassment and retaliation. Barnes did not sign either complaint. On Monday, September 9, 1991, Barnes started another federal job as an attorney at the Resolution Trust Corporation ("RTC") earning the same salary she was previously making at the SEC. On that date, she told the SEC that it should consider her constructively discharged as of September 6, 1991.

The SEC had issued a press release concerning the agency's investigation of Barnes's claims against Matta and other SEC officials. A reporter from the *Houston Chronicle* contacted Barnes's attorney, May, who granted a telephone interview. On September 7, 1991, a front-page newspaper article appeared in the *Houston Chronicle* which quoted May as stating that "an Equal Employment Opportunity complaint filed August 27 [on behalf of Barnes] claims Matta sexually assaulted a female employee" and "that Matta overlooked rapes by other men in the six-person [Houston] office." In fact, both the complaint and the amended complaint alleged that

> as early as 1986, other senior officials at the HBO [Houston Branch Office] including former regional administrator Edwin

J. Tomko, created a hostile and offensive environment for women by their conduct. Their conduct includes rape, sexual assault, sexually suggestive mannerisms, leering, dirty and racist jokes.

Although Barnes's complaint made various allegations against Matta, and did accuse *other* persons of sexual assault, it did not accuse Matta of sexual assault or overlooking rapes by other men. The statement attributed to May in the newspaper article was patently untrue.

After the SEC canceled her EEOC complaint for failure to cooperate, Barnes filed a Title VII and Equal Pay Act action on March 23, 1992.[1] On September 4, 1992, Matta filed suit in a Texas state court asserting claims for defamation and false light publicity against May, Barnes and six media entities seeking damages allegedly resulting from the publication of the article. The defendants removed the defamation suit and sought to consolidate it with the Title VII suit. Although briefly consolidated, the defamation case was eventually severed and carried on the district court's docket as a separate action. On March 31, 1995, the district court granted summary judgment for the

---

[1]Matta was initially named as an individual defendant in Barnes's suit, but was dismissed on April 22, 1993 when the Attorney General certified that Matta had acted within the scope of his employment. On July 8, 1993, on Barnes's motion, the district court reinstated Matta as an individual defendant. Matta filed an interlocutory appeal from that order on August 16, 1993. The district court refused to stay the proceedings during that appeal. On August 1, 1994, in an unpublished opinion, this court reversed the district court and Matta was once again dismissed from the case. *Barnes v. Levitt, et al.,* No. 93-2636 (5th Cir. August 1, 1994). In sum, Matta was a party defendant to the Title VII suit from March 1992 to April 1993 and again from July 1993 to August 1994.

media entities, dismissed the claims against May and Barnes pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and awarded $20,359.36 of costs against Matta.

After that summary judgment/dismissal order became final, May filed a motion for attorney's fees seeking $290,262.00 for services that her attorneys rendered to her in the defamation case as sanctions against Matta. She asserted that the fees were "recoverable and can be awarded under Rule 11, 28 U.S.C. § 1927 and through the exercise of the Court's inherent powers," but did not specify how those legal theories related to her claims. Matta filed a written response in opposition. The district court then granted the motion in a brief order, the body of which we reproduce here in its entirety:

> Defendant S. Beville May's Motion for Attorney's Fees and Costs is before the Court. Having considered the motion and any responses thereto, the Court is of the opinion that S. Beville should have her attorney's fees in this case. It is therefore;

> ORDERED, ADJUDGED AND DECREED that S. Beville May is awarded and shall recover $290,262.00 from and against Joseph C. Matta.

DISCUSSION

Matta challenges the award on appeal, contending that the attorney's fee, awarded in this case as a sanction, cannot be sustained under 28 U.S.C. § 1927, Rule 11 or the court's inherent powers. This Court reviews the imposition of sanctions for an abuse of discretion. *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir.1995). A court abuses its discretion to impose sanctions when a ruling is based on an erroneous view of the law or on a

4

clearly erroneous assessment of the evidence. *Id.*

Because it is impossible to tell what legal theory the district court based the award on, we will examine each in turn.

a. 28 U.S.C. § 1927.

Section 1927 applies to an "attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously...." 28 U.S.C. § 1927 (1994). Unlike Rule 11, § 1927 sanctions are, by the section's plain terms, imposed only on offending attorneys; clients may not be ordered to pay such awards. *Travelers Ins. Co. v. St. Jude Hospital,* 38 F.3d 1414, 1416 (5th Cir.1994).

May argues that § 1927 may be applied to Matta "because he is an attorney and because he appeared *pro se* in an interlocutory appeal in the *Barnes* case, which had been consolidated with the defamation case," citing *ACLI Gov't Sec., Inc. v. Rhoades,* 907 F.Supp. 66 (S.D.N.Y.1995). Further, May points out that Matta did not raise this issue in the district court and argues that he is therefore foreclosed from raising it for the first time on appeal, citing *Clark v. Aetna Casualty & Surety Co.,* 778 F.2d 242, 249 (5th Cir.1985). May contends that Matta's failure to make this argument in the trial court prevented that court from determining whether Matta acted as an offending attorney and not merely a client in this case.

It is clear from the record that Matta was represented by an attorney throughout this case. Neither his status as a licensed

5

attorney nor his *pro se* brief filed in the related case make him liable for attorney fees under § 1927. Therefore, § 1927 cannot serve as the basis of the $290,262 attorney fee award in this case.

b. Rule 11

Matta filed his original petition on September 4, 1992, prior to the amendment of Federal Rule of Civil Procedure 11, that was effective on December 1, 1993. The case was removed and Matta filed his motion to remand prior to the amendment as well. The case remained on the district court's docket until its dismissal on March 31, 1995. The court did not identify, the parties do not assert and we cannot find any action taken by Matta after the December 1, 1993 amendment that might serve as the predicate for the sanctions imposed. We therefore apply the pre-1993 version of Rule 11. *Childs v. State Farm Mut. Auto. Ins. Co.,* 29 F.3d 1018, 1023 n. 17 (5th Cir.1994)(holding that because conduct at issue occurred prior to December 1, 1993, amended Rule 11 was not applied) The former version of Rule 11 provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> .    .    .    .    .

> If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon it own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the

pleading, motion, or other paper, including a reasonable attorney's fee.

Before a court can impose a Rule 11 sanction, "[i]t is axiomatic that the court must announce the sanctionable conduct giving rise to its order." *Topalian v. Ehrman,* 3 F.3d 931 (5th Cir.1993). As an initial matter, the sanctions imposed here are infirm because the record is devoid of any explanation from the district court in this regard. Moreover, Matta argues that the record cannot support a Rule 11 sanction on any factual theory and thus urges us to reverse the sanction award rather than remanding the case to the trial court to supply the necessary factual findings.

Matta asserts that the causes of action, filed in Texas state court, were well-founded in fact and law. We agree. His state court petition alleged that Barnes, both personally and through her attorney defamed him. May was quoted in the newspaper article as claiming that Matta sexually assaulted a female employee and "overlooked rapes by other men in the six-person office." Sexual assault is a second degree felony in Texas. Tex. Pen.Code § 22.011. A false statement which charges a person with the commission of a crime is libelous *per se. Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984). The law presumes a statement which is libelous *per se* defames a person and injures his reputation. *Id.* May's statement that Matta had "overlooked rapes by other men in the six-person office" is also actionable *per se.* "Utterances are slanderous *per se* if they are false, made without privilege and ascribed to another, conduct, characteristics

7

or a condition incompatible with the proper conduct of his lawful profession or office." *McDowell v. State of Texas,* 465 F.2d 1342, 1344 (5th Cir.1972). The accusation that Matta overlooked rapes by men under his supervision accused Matta, at the very least, of conduct incompatible with his profession as an attorney and his position with the SEC.

In addition, May's statements were false on their face. Barnes's EEO complaint did not charge that Matta either sexually assaulted women or overlooked rapes by other men. Matta also submitted an affidavit in which he specifically denied engaging such conduct.

May does not seriously challenge either the fact that her statements to the newspaper were *per se* defamatory or that they were false. Rather, she relies on the district court's finding that her comments to the newspaper reporter were absolutely privileged because they related to the pending SEC administrative proceeding. Under Texas law, no remedy exists in a civil action for libel or slander if an absolute privilege exists. *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909, 912 (1942). A communication made in the course of a judicial proceeding is absolutely privileged. *Id.* This privilege applies to quasi-judicial proceedings before governmental agencies as well. *Astro Resources Corp. v. Ionics, Inc.,* 577 F.Supp. 446, 447 (S.D.Tex.1983). In dismissing Matta's lawsuit, the district court relied on *Russell v. Clark,* 620 S.W.2d 865 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) which held that:

8

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*Id.* at 869 (quoting RESTATEMENT (SECOND) OF TORTS § 586 (1977)). The district court held that May's comments to the newspaper reporter had "some relation to" the SEC proceeding.

Our precedent does not allow the imposition of Rule 11 sanctions merely for the eventual failure of a claim; rather, sanctions are to be applied only where, at the time of the filing, the position advocated is unwarranted. *F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1300 (5th Cir.1994). Therefore, we consider only whether Matta's suit was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Fed.R.Civ.P. 11.

Matta's complaint is both factually distinguishable from *Russell* and arguably sustainable under *Russell* 's holding. The communication in *Russell* was a letter sent by an attorney to potential witnesses during the attorney's investigation of possible causes of action, "seeking evidence for use in pending litigation." *Russell,* 620 S.W.2d at 866. The court concluded that the defamatory letter was absolutely privileged only because it bore some relationship to the litigation about which it was written in that it appeared to be designed to obtain information to be used as evidence. *Id.* at 870. The *Russell* court stated that "the act to which the privilege applies must bear some relationship to a judicial proceeding in which the attorney is employed, and must be

9

in furtherance of that representation." *Id.* at 870. The argument that May's statement to the newspaper was not absolutely privileged is, in our view, a defensible position, warranted under Texas law at the time Matta's suit was filed. May's untruthful statement about what the pending complaint alleged can hardly be said to have furthered her representation of Barnes. We therefore conclude that Matta's suit was well grounded in fact and in law.

Even if well grounded in fact and law, sanctions may be available under Rule 11 if a pleading is interposed for "any improper purpose." In May's motion for attorney's fees she quoted the following language in an order that had been entered in the related case of *Barnes v. Levitt:*

> Matta felt secure in filing a suit for defamation against Ms. May, Ms. Barnes and various members of the media, knowing full well that the suit was frivolous and filed merely to vex Ms. Barnes and her attorneys.

Order, C.A. No. H-92-0898 at 5-6 (S.D.Tex. Jan. 29, 1996). She asks this court to give that statement the stature of a factual finding in the present case, acknowledging that a severe sanctions order requires a detailed exposition of the specific facts that support it. *See Topalian v. Ehrman,* 3 F.3d 931, 936 n. 5 (5th Cir.1993). Assuming, without deciding, that the statement could be construed as an implied factual finding of improper purpose in response to the motion for sanctions filed several weeks later in a separate cause of action, we hold that such a finding is clearly erroneous. Matta's suit alleged that May made a *per se* defamatory statement, untrue on its face which was published in a front-page article in one of the two major newspapers in Houston, Texas.

10

Further, the article impugned his ability to do his job as a public employee in that city. Not only does his suit pass the tests for sound legal and factual basis, the damages to a government employee and attorney from such defamation are potentially substantial.

Finally, May argues that the district court impliedly found that she was personally targeted as a defendant in this suit because Matta wished to interfere with her performance as Barnes's attorney in the employment discrimination case. We reject this contention as well. Of all the named defamation defendants, May was in the best position to appreciate the factual and legal implications of her statement to the newspaper and thus to avoid the alleged damages. Therefore, naming her personally as a defendant in the suit cannot be said to have been vexatious or for purposes of harassment.

In sum, Rule 11 does not provide a legal basis for the award of attorney fees in this case.

c. The district court's inherent power to sanction

The final basis proffered by May in her motion for a fee-shifting sanction was an award under the court's inherent powers. The threshold for the use of inherent power sanctions is high. A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the "very temple of justice." *Chambers v. NASCO,* 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court must make a specific finding that the sanctioned party acted in bad faith in order to impose such

11

sanctions. *Dawson v. United States,* 68 F.3d 886, 895 (5th Cir.1995). May again relies on the language of the January 29, 1996 Order in the *Barnes* case, arguing that the "suit was frivolous and filed merely to vex" language is adequate to meet the requirement for a bad faith finding. For the reasons discussed above, we hold that there is not a sufficient basis for a finding of bad faith, so that, even if the quoted language arguably amounts to a bad faith finding, it is clearly erroneous.

## CONCLUSION

For the foregoing reasons, the award of attorney fees against Matta is REVERSED, and we find it unnecessary to reach the other points of error raised by Appellant.

REVERSED.