**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

No. 97-20417

---

MAGUIRE OIL COMPANY, et al.,

Plaintiffs,

MAGUIRE OIL COMPANY,

Plaintiff-Appellee,

versus

THE CITY OF HOUSTON,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

June 18, 1998

Before JOLLY, WIENER, and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Defendant City of Houston ("the City") appeals the district court's order requiring the City to pay $98,578.10 in sanctions to plaintiff Maguire Oil Company ("Maguire") for "wrongfully caus[ing] the removal of this case from state court to federal court and, thereafter, deliberately conceal[ing] from the Court and counsel information pertinent to [the] Court's jurisdiction." Because we find that the district court abused its discretion in imposing sanctions, we reverse.

# I.

## FACTS AND PROCEDURAL HISTORY

On October 27, 1993, Maguire filed suit in Texas state court for damages and a declaratory judgment against the City, alleging that certain actions taken by the City against mineral interests it owned near Lake Houston amounted to, *inter alia*, (1) a taking without adequate compensation or due pro cess of law; and (2) unreasonable discrimination against a mineral property owner.[1] The targeted City actions were not only dubious, but—as seen below—foretelling of further questionable behavior on the City's part (*i.e.*, during the instant litigation); specifically, the City issued a stop-work order on a Maguire-owned gas well that only months earlier it had authorized via permit.[2] These actions prompted Maguire to raise not only the aforementioned claims, but also claims of negligent misrepresentation, promissory estoppel and estoppel.

Noting that Maguire had asserted "violations of [its] rights under the United States Constitution," the City timely removed the case to the United States District Court for the Southern District of Texas on the ground that the court had "original jurisdiction [because the case was] a civil rights action arising under the [C]onstitution, laws or treaties of the United States." Trial thereafter commenced on November 7, 1995. On November 13, 1995, the district court granted the City's motion for judgment as a matter of law on Maguire's claims of negligent misrepresentation,

---

[1]Maguire's takings, or inverse condemnation, claim was premised on both (1) the Fifth and Fourteenth Amendments to the United States Constitution and (2) Sections 17 and 19 of Article I of the Texas Constitution. Maguire did not specify a constitutional or statutory basis for its unreasonable discrimination claim.

[2]According to the City, the permit was issued in violation of Section 23-102 of the Houston Code, which prohibits the drilling of a well for the purpose of exploring for oil, gas and other minerals within 1,000 feet of Lake Houston.

promissory estoppel and estoppel, but denied the motion as to Maguire's claim of inverse condemnation.[3] On November 15, 1995, a jury rendered a verdict in favor of the City, finding that the City's actions did not constitute inverse condemnation of Maguire's mineral interests.

Maguire then filed a "Motion for New Trial on the Negligent Misrepresentation, Promissory Estoppel, and Estoppel Claims," followed by a "Renewed Motion for Judgment as a Matter of Law and, in the Alternative, [a] Motion for New Trial on [the] Takings [Claim]." On September 6, 1996, the district court granted Maguire's motion for new trial as to the negligent misrepresentation claim and requested further briefing on whether the inverse condemnation claim was barred by the applicable statute of limitations.

The district court never ruled on the statute of limitations issue, holding instead that it lacked subject matter jurisdiction over the entire case. In so holding, the court noted that in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985), the Supreme Court held, *inter alia*, that a takings claim under the Fifth Amendment is not ripe for review until "the owner [of the property at issue] has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." See also Samaad v. City of Dallas, 940 F.2d 925, 934 (5th Cir. 1991) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." (quoting Williamson, 473 U.S. at 195, 105 S.Ct. at 3121)). The district court found that because (1) Texas had adequate procedures to remedy a deprivation of property by government

---

[3]On appeal, the parties do not explain the fate of Maguire's "unreasonable discrimination" allegation. From our review of the record, it appears that Maguire did not pursue this claim with diligence and thus it became overshadowed by the other asserted claims.

regulation and (2) Maguire did not first litigate the claim in state court, Maguire's inverse condemnation claim was not ripe for review. See Rolf v. City of San Antonio, 77 F.3d 823, 826-27 (5th Cir. 1996) (holding that Texas recognizes a cause of action for inverse condemnation when property is directly restricted, and that "[a] state's [remedial] procedure is adequate even though its law is unsettled whether the claimant would be entitled to compensation."). In addition, the court held that because it did not have "jurisdiction over the federal claim asserted by Maguire," it could not exercise jurisdiction over Maguire's state law claims.

Before remanding the case to state court, however, the court observed that on December 8, 1995, the United States District Court for the Southern District of Texas had held—through a different judge—that it lacked subject matter jurisdiction in Trail Enterprises, Inc. v. City of Houston, 907 F.Supp. 250 (S.D. Tex. 1995), a case that involved not only a virtually identical federal takings claim, but also removal of the claim *by the same defendant* (the City) prior to the claim's final resolution in state court. Id. at 251 (citing Williamson, 473 U.S. at 193-94, 105 S.Ct. at 3120). Because it appeared that "the City of Houston may have deliberately taken inconsistent positions on the jurisdiction issue and may have caused an unnecessary duplication of time and expense in this case," the court invited Maguire to submit "any motion that [it] wish[ed] to file related to this matter before a final order remanding the case [was] entered." Maguire filed a motion for fees, costs, and sanctions, citing three possible sources for the court's authority to issue such an award: (1) the court's inherent sanctioning power, which may be invoked when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); (2) 28 U.S.C. § 1927, which supports an award against an "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously

4

. . . ."; and (3) 28 U.S.C. § 1447(c), which states that "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." In support of its motion, Maguire argued that the City wrongfully removed the case to federal court, and thereafter, concealed the Trail decision from the court's attention. Maguire averred that in November 1996, while preparing for an upcoming pretrial conference, its attorney uncovered the Trail opinion and—despite Maguire's preference to have the retrial occur in federal court—promptly brought the opinion to the court's attention in accordance with his professional responsibilities. Maguire added that "[d]espite the clear significance of [the Trail decision] to the proceedings in the case at bar, the City of Houston never informed [anyone] about the decision"—and thus deliberately concealed a jurisdictional "trump card" from the court's (and Maguire's) attention. Maguire sought (2) $162,738 for fees and expenses incurred for non-reusable work devoted to the November 1995 trial; (2) $98,578.10 for fees and expenses incurred during post-trial litigation following the Trail decision; and (3) $98,578.10 as sanctions for the City's misconduct.

The district court partially granted Maguire's motion for sanctions in a brief order, the pertinent part of which is reproduced below:

> [T]he Court is of the opinion and finds that the City of Houston wrongfully caused the removal of this case from state court to federal court and, thereafter, deliberately concealed from the Court and counsel information pertinent to this Court's jurisdiction, all of which caused a multiplication of proceedings and the needless duplication of time and expense . . . . For these reasons, . . . [Maguire's motion] is **GRANTED** in part and the City of Houston is **ORDERED** to pay to Maguire . . . the sum of $98,578.10 as partial reimbursement for attorney fees, costs and litigation expenses needlessly incurred by Maguire . . . as a consequence of the conduct of the City of Houston.

The district court then remanded the case to state court. The City timely appeals the order imposing sanctions.

5

On appeal, the City contends that the sanctions imposed cannot be sustained under any of the grounds identified by Maguire in its motion for fees, costs and sanctions. While a remand order based on the lack of subject matter jurisdiction cannot be reviewed on appeal, see Mobil Corp. v. Abeille General Insur. Co., 984 F.2d 664, 665 (5th Cir. 1993), a concomitant imposition of sanctions is not similarly shielded. Miranti v. Lee, 3 F.3d 925, 927-28 (5th Cir. 1993).

"This Court reviews the imposition of sanctions for an abuse of discretion." Matta v. May, 118 F.3d 410, 413 (5th Cir. 1997). "A court abuses its discretion to impose sanctions when a ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. Because the abbreviated ruling at issue does not disclose under what legal authority sanctions were imposed, we will examine each of the possible grounds offered by Maguire.

A. *28 U.S.C. § 1927*

Although Maguire invoked section 1927 as a possible basis for sanctions below, it wisely does not urge affirmance of the district court's award on that basis now. Section 1927 applies to an "attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously," 28 U.S.C. § 1927, and is thus—by its own terms—available only against attorneys and not parties. See Matta, 118 F.3d at 413-14 ("[Section] 1927 sanctions are, by the section's plain terms, imposed only on offending attorneys; clients may not be ordered to pay such awards.") (citation omitted). Because the award at issue in this case was imposed against the City—and not any of the attorneys involved—it plainly cannot be sustained under section 1927.

B.  *28 U.S.C. § 1447(c)*

The City argues that irrespective of section 1447(c)'s allowance that "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of . . . removal," 28 U.S.C. § 1447(c), the sanctions imposed in this case cannot be sustained under section 1447(c) because the City did not "wrongfully remove" the case from state court.   While Maguire does not dispute that "the propriety of the defendant's removal [is] central in determining whether to impose fees [under 28 U.S.C. § 1447(c)]," Miranti, 3 F.3d at 928, Maguire contends that because the district court's order reimbursed it only for attorney's fees and costs incurred *after* the Trail decision was rendered—and did not impose sanctions for expenses incurred prior to and during the November 1995 trial—the issue of whether the City wrongfully removed the case is a red herring.[4]  Indeed, Maguire's brief nowhere urges us to affirm the district court's award on the basis of section 1447(c).

While the district court's limitation of the sanction award to expenses incurred after the Trail decision was rendered strongly suggests that the City was sanctioned only for failing to bring the Trail decision to the court's attention, the language of the sanction order itself  explicitly references the City's "wrongful[] . . . removal" of the case as one of the reasons for granting Maguire an award.  Therefore, the City is more than justified in proffering an argument that it did not wrongfully remove this action from state court, and that an award of sanctions is unwarranted under section 1447(c).

We agree with the City that section 1447(c) cannot sustain the award of sanctions at issue in this case.  In Avitts v. Amoco Production Co., 111 F.3d 30, 32 (5th Cir.), cert. denied, 118 S.Ct. 435,

---

[4]Maguire avers that the City has already been penalized for its "wrongful removal" of the case by the district court's order to remand.

139 L.Ed.2d 335 (1997), we stated:

> [i]f a plaintiff bears a substantial share of the responsibility for the case remaining in federal court, a court abuses its discretion by awarding the plaintiff any sums under § 1447(c). In other words, a plaintiff may in certain cases be estopped from recovering costs and attorney's fees under § 1447(c) when his conduct after removal plays a substantial role in causing the case to remain in federal court.

Maguire does not dispute on appeal the City's assertion that Maguire played a crucial role in persuading the district court to retain jurisdiction over this case. Given that Maguire (1) alleged violations of both state and federal law in its original state law complaint; (2) did not move to remand after the case was removed; (3) alleged in its amended complaint that the district court had jurisdiction over the case; and (4) persisted in arguing—even after informing the district court about the Trail decision—that federal jurisdiction nevertheless existed under Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), we find that Maguire indeed played a substantial role in causing the case to remain in federal court after its removal. The district court's imposition of sanctions therefore cannot be sustained under section 1447(c).

C. *THE COURT'S INHERENT POWERS*

We now turn to the primary issue in this case—whether the district court's award of sanctions may be sustained under the court's inherent power to sanction deplorable conduct in litigation. See Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In Chambers, the Supreme Court indicated that even if a statute or rule governs the imposition of attorney's fees, a court may "resort to its inherent power to impose attorney's fees, as a sanction for bad faith conduct." Id. at 50, 111 S.Ct. at 2135. It is well-settled, however, that the threshold for the use of inherent sanctioning power is high, and once the power is invoked, it must be "exercised with restraint and discretion." Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir. 1995) (citations

8

omitted). Accordingly, before imposing sanctions under its inherent power, a court must make a *specific* finding that the sanctioned party acted in "bad faith." Matta, 118 F.3d at 410.

In this case, the district court held that the City "wrongfully caused the removal of this case . . . and, thereafter, deliberately concealed from the Court and counsel information pertinent to this Court's jurisdiction." Although the district court's holding is ambiguous in terms of specifying (1) the particular City action that was taken in "bad faith" and (2) the precise information that was "deliberately concealed," the parties have raised no arguments along those lines, and instead have narrowly framed the issue on appeal as follows: whether the evidence was sufficient to show that the City deliberately concealed the Trail decision from the district court's attention, thus warranting an imposition of sanctions under the court's inherent powers. The parties' focus on the Trail decision is by no means unreasonable, given that the district court awarded Maguire only those fees, costs, and expenses incurred after that decision was rendered. We thus turn our attention to the Trail decision and the evidence presented on whether the City deliberately concealed it as a jurisdictional "trump card."

1. The Trail Decision

In Trail, the plaintiff—an oil and gas lessee of certain acreage in the vicinity of Lake Houston ("Trail Enterprises")—filed suit in state court, alleging that the City of Houston had (1) enacted a city ordinance prohibiting the drilling of oil and gas wells within an area that encompassed its leased acreage and (2) failed to respond to its request for a variance to permit it to drill wells within the subject area. Trail, 907 F.Supp. at 251.[5] Trail Enterprises alleged two causes of action. The first

___

[5] While the Trail court did not identify the specific City ordinance at issue, the City does not dispute Maguire's assertion that it was Houston Code Section 23-102, the very ordinance that precipitated the instant litigation.

9

action, for declaratory judgment that the ordinance was void, was based primarily on state law, but included an allegation that the ordinance violated Article I, § 10, Clause 1 of the United States Constitution. Id. The second action, for damages resulting from the inverse condemnation of its property, was based on both the Texas and United States Constitutions. Id.

Based on the federal claims that were asserted, the City removed the case to the United States District Court for the Southern District of Texas. Trail Enterprises then filed a motion to remand, arguing that because state remedies had not yet been exhausted, the inverse condemnation claims were not ripe. Id. The City responded that because Trail Enterprises invoked other provisions of the federal constitution as a basis for relief, removal was proper. Id. The district court, relying on Williamson, 473 U.S. at 193-94, 105 S.Ct. at 3120, held that because "the federal constitutional claims of an uncompensated taking for public use [were] unripe, [it had] no federal question jurisdiction over the federal takings claims." Id. In addition, the court declined to entertain Trail Enterprise's declaratory judgment claim, noting that it was primarily based on state law. The court remanded the entire case to state court on December 8, 1995.

We agree with the district court's assessment that, in all material respects, the factual and procedural backdrop of the Trail case is virtually identical to that in the instant case, and that once the Trail court decided that it did not have jurisdiction over the asserted claims, the district court should have been informed of that decision. Both cases involved not only the City as a defendant, but claims of inverse condemnation that were: (1) based on the same City ordinance; (2) removed to the United States District Court for the Southern District of Texas prior to being adjudicated in state court; and (3) asserted in conjunction with primarily state law claims. The fact that Maguire sought the return of a drilling permit that had previously been issued, whereas Trail Enterprises sought a

10

drilling permit for the first time (*i.e.,* through variance procedures), is a distinction without a difference to the crucial issue of whether federal subject matter jurisdiction existed over Maguire's claims. Indeed, the City conceded below that once the Trail court decided that jurisdiction was lacking over the claims asserted, the attorneys assigned to the Maguire case were under an obligation—if they were aware of that decision—to disclose it to the court below. We do not disagree with that assessment.

2. Evidence of the City's Deliberate Concealment of the Trail Decision

While the district court understandably was perturbed that the City failed to inform it of the Trail decision, it nonetheless could not impose sanctions for the City's ineptitude unless it first made a specific finding that the City acted in "bad faith." Chaves, 47 F.3d at 156 ("In order to impose sanctions . . . under its inherent power, a court must make a specific finding that the [sanctioned party] acted in "bad faith."). Although the court purported to make such a finding in its brief order imposing sanctions—"[the City] deliberately concealed . . . information pertinent to this Court's jurisdiction"—our review of the record reveals that this finding was based on a clearly erroneous assessment of the evidence. Indeed, nothing in the record indicates that the City deliberately concealed the Trail decision from the district court's attention between December 8, 1995 (the date the Trail decision was rendered) and November 14, 1996 (the date the court below was informed of that decision). Consequently, the imposition of the sanctions at issue cannot be sustained under the court's inherent powers.

Suffice it to say, the fact that the City was the defendant in Trail and should have known for some time that federal subject matter jurisdiction was problematic in the instant case causes us much concern, particularly with regard to the City's coordination (or lack thereof) in handling its litigation

11

activities.[6] To say that the proverbial "left hand did not know what the right hand was doing" is an understatement. Nonetheless, the City argues, as it did below, that "the attorneys who handled this case were not the same attorneys who handled the Trail [Enterprises] case," and that there was no evidence that it "deliberately failed to disclose any information to the [court below]." As part of its opposition to Maguire's motion for sanctions, the City introduced the affidavits of four City attorneys—Jocelyn Labove ("LaBove"), an Assistant Attorney for the Defense Litigation Division; Robert Cambrice ("Cambrice"), the Chief of the Defense Litigation Division; Judy Hatfield ("Hatfield"), an Assistant Attorney for the Business Litigation Division; and Gene Locke ("Locke"), the City Attorney—who collectively attested to the following facts:

(1) the City Attorney's office is divided into ten divisions, including the Defense Litigation Division and the Business Litigation Division;

(2) the Maguire case, upon its filing in late 1993, was assigned to the Defense Litigation Division, whereas the subsequently filed Trail Enterprise case was assigned to the Business Litigation Division;

(3) the attorneys responsible for the Maguire case (including LaBove and Cambrice) were unaware of "the specifics [of the Trail case]"—most notably its procedural history (i.e., that it was originally filed in state court, then removed and remanded)—until counsel for Maguire presented the Trail decision to the district court in November 1996;

(4) the attorneys responsible for the Trail case (including Hatfield) did not

_____

[6]The City's behavior is especially perplexing in light of the fact that the Trail case and the instant case were docketed in the same courthouse.

12

communicate the Trail court's December 8, 1995, holding regarding subject matter jurisdiction to the attorneys responsible for the Maguire case, because—to the best of their knowledge—the Maguire case was conclusively decided in favor of the City in November 1995; and

(5) the lack of communication between the two divisions stemmed from the cases being assigned to different divisions and likely "would [not] have [occurred] if the cases had been handled out of the same division."

In addition, the City conceded in its opposition motion that the above-noted miscommunication between its attorneys rose to the level of negligence, and that the district court should have been informed about the Trail decision as soon as it was rendered. Unfortunately for Maguire, however, mere negligence does not trigger a court's inherent sanctioning power.[7]

To its fatal detriment, Maguire presented no rebuttal evidence to suggest that the City's actions went beyond mere negligence to constitute intended deceit, *i.e.,* bad faith. In particular, Maguire introduced no evidence to suggest that the City deliberately withheld the Trail decision from the attorneys working on the Maguire case, or that the Maguire attorneys were aware of the decision and failed to disclose it to the district court. Instead, Maguire merely asserted, as it does on appeal, that the City was generally "aware" of the Trail decision through the imputed knowledge of the attorneys who worked on that case, and that the City failed to disclose the decision to the court below. The City does not dispute these assertions, however, and reiterates on appeal that its failure

---

[7]The City assures us that corrective measures have since been implemented to ensure that, "absent extraordinary circumstances, cases involving substantially related matters [are] handled out of the same division." According to Locke, these measures should reduce the likelihood of a repeat of the questionable conduct exhibited by the City during this case.

to disclose the Trail decision was negligent.  It argues, however,  that the record does not support a finding that it *deliberately* concealed its "awareness" of the Trail decision from the district court, and we agree.[8]  The City's explanation for its actions—albeit establishing its conduct during this litigation to be slipshod—was plausible, and was neither rebutted in the least by Maguire nor discounted by any fact-finding on the part of the district court.  Because the record cannot support a finding that the City acted in "bad faith," we conclude that the district court improperly invoked its inherent sanctioning power against the City.

## III.

---

[8]In a footnote in its brief, Maguire asserts that LaBove's affidavit—in which LaBove admits to disclosing the names of experts used in the Maguire case to Hatfield—"inadvertently proves" that the City was aware of the district court's lack of jurisdiction, and that it deliberately concealed this fact from the court's attention.  In that affidavit, LaBove stated:

> At no time prior to the date of [November 14, 1996] was I aware that the Trail case had been removed from the state district court to federal [court] or that it had been remanded in December 1995 for lack of subject matter jurisdiction.  As best as I can recall, I conveyed the names of experts that we used in the Maguire case at trial to Judy Hatfield, the attorney handling for the City the Trail[] case.  This, however, if it occurred, did not occur until sometime after the trial in the referenced case.

Essentially, Maguire claims that this affidavit establishes (1) that LaBove was made aware (presumably through Hatfield) about the challenge made to the Trail court's subject matter jurisdiction, and (2) that the attorneys working on the instant case were thus cognizant of the district court's precarious jurisdictional reach over the claims asserted.

We disagree with Maguire's interpretation of LaBove's affidavit.  To begin, the affidavit provides no indication that LaBove's interaction with Hatfield occurred after December 8, 1995, the date the Trail court remanded for lack of subject matter jurisdiction.  More importantly,  there is no indication that LaBove was made privy to the challenge that had been made to the Trail court's jurisdiction (*i.e.,* assuming her interaction with Hatfield occurred before December 8, 1995), or to the Trail court's ultimate decision to remand for lack of subject matter jurisdiction (*i.e.*, assuming their interaction occurred after December 8, 1995).  Without more damning evidence concerning the substance of the conversation between LaBove and Hatfield, we decline to discount LaBove's explicit assertion that she was unaware of the Trail decision until November 14, 1996, the date the court below was informed of it.  Maguire's effort to "grab at straws" in this manner makes more evident our conclusion that the record contains no evidence of active misconduct on the City's part.

14

## CONCLUSION

For the foregoing reasons, we hold that the district court's imposition of sanctions against the City cannot be sustained under (1) 28 U.S.C. § 1927, (2) 28 U.S.C. § 1447(c), or (3) the court's inherent sanctioning power. There being no further arguments of the parties to consider, the judgment of the district court is REVERSED.