United States Court of Appeals,

Fifth Circuit.

No. 94-60388

Summary Calendar.

Luis Cuna CHAVES, Oscar D. Barbosa, Nikolay Shmakov, Konstantin Anchev, Victor Formenkov, Danail Ivanov, Vyacheslav Shutikov, Oscar L. Goinhex, Frederick D. Brooks, Clive D. Bennet, Dene E. Zepeda and Captain Leonard O'Keefe, Plaintiffs,

v.

The M/V MEDINA STAR, formerly the M/V Odessa Star *in rem,* and Casblan Maritime, Gema Shipping & Trading and Captain Jose Otero *in personam,* Defendants.

March 10, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHNSON, WIENER, and STEWART, Circuit Judges.

JOHNSON, Circuit Judge:

Under the authority of the inherent power of the court, the magistrate judge imposed sanctions on attorney for allegedly bad faith conduct in litigation. Attorney appeals and we REVERSE.

I. FACTS AND PROCEDURAL HISTORY

On February 8, 1994, attorney Jimmie M. Spears brought suit on behalf of several crew members of the M/V MEDINA STAR seeking the recovery of earned but unpaid wages. As Spears chose to pursue the plaintiffs' claims *in rem,* he contemporaneously requested the issuance of a warrant for the arrest of the vessel. The magistrate judge to whom the case was assigned granted this request, issued a warrant and the U.S. Marshal arrested the vessel in Freeport,

1

Texas.[1]

Two days later, the magistrate judge held a hearing to determine the amount of security to be posted to effect the release of the vessel. At that hearing, the initial group of intervenors appeared asserting claims actionable against the M/V MEDINA STAR *in rem.* Additionally, the captain of the M/V MEDINA STAR, a named-defendant, personally appeared and requested that the hearing be continued to permit him time to employ counsel. Accordingly, the magistrate judge granted the intervention and rescheduled the hearing for setting the amount of the bond for February 18, 1994.

On February 18, a second group of intervenors appeared asserting claims actionable *in rem* against the M/V MEDINA STAR. The magistrate judge granted the intervention.[2] Further, the magistrate judge set the amount of the bond at $440,000. This amount was calculated to secure payment of all claims pending before the magistrate judge.[3]

---

[1]To effect this seizure, the plaintiffs, in accordance with the local rules, posted a $5,000 bond to cover the expenses incurred by the U.S. Marshal in this matter.

[2]During this hearing, Spears complained that only his clients, the original plaintiffs, had participated in the seizure of the vessel. Hence, he suggested that the intervenors should join in the seizure to protect their interests in the litigation. Moreover, both sets of intervenors had, in fact, requested in their intervening complaints that the vessel be arrested. Nevertheless, the magistrate judge did not act on those requests and thus the intervenors never joined in the seizure. As a consequence, the expenses of the seizure continued to be borne by the original plaintiffs alone even though the jurisdictional benefits of the seizure inured to the advantage of all claimants against the vessel.

[3]The sole exception to this was the claim of the preferred mortgage holders who explicitly asked the court to ignore their

Shortly thereafter, the original plaintiffs, represented by Spears, reached a settlement of their claims. Accordingly, and without seeking court approval, Spears, on February 23, 1994, submitted a document to the Marshal purporting to authorize the release of the vessel.[4]

This action distressed the magistrate judge who feared that, while he still had claimants against the vessel pending, his *in rem* jurisdiction over the vessel could sail with the tide.[5] Believing that Spears had no authority to unilaterally release the vessel when he knew there were other claimants before the court, the magistrate judge ordered Spears to appear and show cause why he should not be held in contempt or otherwise sanctioned for his role in the release of the M/V MEDINA STAR from *custodia legis.* In defense of his action, Spears argued that because only his clients, the original plaintiffs, had the vessel arrested, he, as their attorney, had the authority to release their seizure of the vessel.

The magistrate judge rejected Spears' argument, though. Further, the magistrate judge found that Spears had acted in bad

claim in the determination of the bond amount.

[4]Two days later, the original plaintiffs filed their motion to dismiss their claims.

[5]In fact, there was very little risk that the vessel would sail because of the financial difficulties of the owner and the mechanical problems the vessel was experiencing. Moreover, the other parties in the litigation were notified of Spears' action in releasing the vessel prior to the time that the vessel could have sailed and in time to rearrest the vessel on their own behalf if they wished to pursue their claims. The remaining parties did rearrest the vessel and thus the jurisdiction of the court was not actually harmed.

faith in acting to jeopardize the jurisdiction of the court. Accordingly, relying on the inherent power of the court, the magistrate judge imposed sanctions upon Spears in the amount of $2,500 payable within ten days. Spears objected to the Opinion and Order issued by the magistrate judge and requested review by the district court. The district court upheld the action of the magistrate judge, however. Spears now appeals to this Court.

II. DISCUSSION

A. Jurisdiction

Before we address the merits of this case, we must satisfy ourselves that we have jurisdiction. In *Click v. Abilene National Bank,* 822 F.2d 544 (5th Cir.1987), we held that an order awarding Rule 11 sanctions against an attorney was not final and appealable under 28 U.S.C. § 1291.[6] Moreover, the *Click* Court held that the order was not an appealable collateral order under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[7] The prerequisites of an appealable

---

[6]*But see, Crookham v. Crookham,* 914 F.2d 1027, 1029 n. 4 (8th Cir.1990); *Reygo Pacific Corp. v. Johnston Pump Co.,* 680 F.2d 647, 648 (9th Cir.1982).

[7]There is disagreement in the circuits on this issue. The First, Third, Tenth and Federal Circuits also hold that an appeal of a sanction order issued against an attorney for a party is not an appealable collateral order under *Cohen. In re Licht & Semonoff,* 796 F.2d 564 (1st Cir.1986); *Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik,* 658 F.2d 944 (3d Cir.1981); *G.J.B. & Assoc. v. Singleton,* 913 F.2d 824 (10th Cir.1990); *Sanders Associates, Inc. v. Summagraphics Corp.,* 2 F.3d 394 (Fed.Cir.1993). However, the Second, Seventh, Eighth, and Eleventh Circuits hold that an attorney for a party may immediately appeal a sanction order pursuant to *Cohen. See e.g. Sanko S.S. Co. v. Galin,* 835 F.2d 51 (2d Cir.1987); *Frazier v. Cast,* 771 F.2d 259 (7th Cir.1985); *Crookham v. Crookham,* 914

4

*Cohen* order are that: 1) it must conclusively determine the disputed question, 2) it must resolve an important or serious and unsettled question, 3) which is completely separable from and collateral to the merits of the parties' litigation, and 4) if not appealed as a collateral matter, the district court's determination must be practically unreviewable. *Rives v. Franklin Life Insurance Co.,* 792 F.2d 1324, 1327 (5th Cir.1986); *Click,* 822 F.2d at 545. The *Click* Court found that the final criterion was not met because Rule 11 sanctions against an attorney can be and routinely are appealed when merged into the district court's final judgment. *Id.*

This decision was reaffirmed in *Schaffer v. Iron Cloud, Inc.,* 865 F.2d 690 (5th Cir.1989). In *Schaffer,* as in the instant case, the sanction order against the attorney was immediately payable. Even so, in the absence of any showing that the sanction impeded the plaintiff's access to the courts, this Court saw no reason to diverge from *Click's* holding that such an order was not an appealable collateral order under *Cohen.* *Id.* at 691.

However, this Court did diverge from the *Click* rule in *Markwell v. County of Bexar,* 878 F.2d 899 (5th Cir.1989). In that case, the district court imposed monetary sanctions against an attorney who had withdrawn from representation of any party at the time of the appeal. In addressing whether this fact distinguished this case from the holding of *Click,* the *Markwell* Court looked to our sister circuit's opinion in *Eavenson, Auchmuty & Greenwald v.*

F.2d 1027 (8th Cir.1990); *Transamerica Commercial Fin. Corp. v. Banton, Inc.,* 970 F.2d 810 (11th Cir.1992).

*Holtzman,* 775 F.2d 535 (3d Cir.1985). That court held that a sanctions order imposed against an attorney that had withdrawn from the litigation was an appealable collateral order because the attorney had an immediate interest in challenging the sanction, which interest was not shared by the parties to the suit or by counsel to a party, and that the sanctions order would be effectively unreviewable from a final judgment in the litigation. *Id.* at 538-39. Relying on this reasoning, the *Markwell* Court determined that an exception to the *Click* rule was warranted where an order assesses sanctions against an attorney who has withdrawn from representation at the time of the appeal and where immediate appeal of the order would not impede the progress of the underlying litigation. *Markwell,* 878 F.2d at 901.

We believe that the facts of the instant case fall within the exception set out in *Markwell.* While attorney Spears has not withdrawn from representation of his clients, his clients have settled and have been voluntarily dismissed from the underlying action. Spears has no further interest in the merits of the litigation. However, he clearly has an interest in challenging the sanction against him and this interest is not shared by any other party or attorney in the underlying litigation. Further, as Spears is no longer connected with the merits of the case, it is unclear that he would be able to obtain review of the sanctions order after final judgment. Finally, we are unable to discern any impediment to the progress of the underlying litigation that would be caused by our consideration of this appeal. Accordingly, we conclude that

6

we have jurisdiction over Spears' appeal under the collateral order doctrine.

B. Sanctions Under the Court's Inherent Power

We review the imposition of sanctions for an abuse of discretion. *Resolution Trust Corp. v. Bright,* 6 F.3d 336, 340 (5th Cir.1993). A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

As authority for the instant order, the magistrate judge relied entirely on the inherent power of the court to impose sanctions against attorneys for bad faith conduct in litigation. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). While this power undoubtedly exists, the threshold for the use of inherent power sanctions is high. *Reed v. Iowa Marine and Repair Corp.,* 16 F.3d 82 (5th Cir.1994). Indeed, the Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132; *see also Natural Gas Pipeline Co. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1406-07 (5th Cir.1993) (inherent powers must be exercised with restraint and discretion and only sparingly so). In this case, we find the mandated restraint lacking.

In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in "bad faith." *Bright,* 6 F.3d at 340; *In re*

7

*Thalheim,* 853 F.2d 383, 389 (5th Cir.1988). In this case, the magistrate judge found that Spears acted in bad faith when, without any authorization from the court, Spears purported to authorize the U.S. Marshal to release the vessel.

As the magistrate judge interpreted the sparse law on the subject, Spears could not, when he knew that there were other claimants before the court pressing claims against the vessel who had not rearrested the vessel, release the vessel without an order from the court.[8] Spears, by contrast, contended that since he was the only attorney who, for the benefit of his clients, caused the vessel to be seized, he had the authority to release the vessel.

We need not resolve this question to decide this case. We merely determine that Spears' argument is far from specious and his motivation was obviously to serve his client and not to defeat the jurisdiction of the court over the intervenors' claims.

First, we note that Spears' argument has some equitable appeal. Only his clients had caused the vessel to be arrested and only his clients were bearing the costs of that seizure. The intervenors had incurred no expense and were attempting to ride his

---

[8]Chiefly, the magistrate judge relied on the case of *The Oregon,* 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943 (1895). Unlike the instant case, *The Oregon* involved a situation where intervenors presented their claims only *after* the vessel had been released. Under those facts, the Supreme Court reversed a lower court's ruling that had given the intervenors priority in the stipulation paid into the court to effect the release of the vessel. However, in dicta, the court opined that had the vessel still been in custody when the intervening petitions had been filed, the vessel could not have been released "until a stipulation [was] given to answer all the libels on file." *Id.* at 210, 15 S.Ct. at 814.

jurisdictional coattails. Thus, Spears argued that in order to protect jurisdiction *in rem* for their claims, the intervenors would have had to participate in the arrest of the vessel and share in the expenses pro rata. As they had not done so, they could not complain when he released the vessel.[9]

Next, it seems clear that Spears believed that the local custom of the Southern District was that seized vessels could be released, without an order of the court, upon a notice of consent by the seizing party's attorney to the release of the vessel.[10] As

---

[9]That this position apparently was shared at least by the attorney for one of the groups of intervenors is shown in a dialogue with the magistrate judge in the hearing held after Spears had released the vessel. After admonishing Spears for his actions and ordering Spears to submit authority showing cause why he should not be sanctioned for his action, the magistrate judge queried the intervenors as to whether they desired to rearrest the vessel at that time. The following colloquy ensued.

> MR. ROSS: No, Your Honor, we'll wait until tomorrow for that because I am going to ask that if the other maritime lien claimants want to participate in this arrest, so that nobody gets in the position with the Court that Mr. Spears is in, then if they are not participants in the arrest, then they shouldn't have—if they don't put up part of their money to pay these expenses, then they don't have any grounds to complain if we release it, is my feeling over this.
>
> THE COURT: That's fine. That's Mr. Spears' feeling as well.
>
> MR. ROSS: And—and so, we are going to ask the Court to require of all these intervening claimants that they pay a pro rata share on number of claimants.

R. Vol. 1 at 357.

[10]To establish that this was the local custom, Spears presented documents entitled Release of Seizure from seven prior cases in the Southern District wherein the vessel had apparently been released from seizure solely on the signature and representations of the seizing attorney. Additionally, Spears

9

he was the only attorney who had caused the vessel to be seized, he states that he believed that he had the authority to release the vessel.  In support of the alleged local custom and his action, Spears turned to Rule E(5)(c) of the Supplemental Rules for Certain Admiralty and Maritime claims of the Federal Rules of Civil Procedure.[11]  This rule at least arguably supports Spears' position that he, as the seizing attorney, had the authority to release the vessel.

Lastly, we note that Spears' motive was not to jeopardize the jurisdiction of the magistrate judge.  Spears' clients were incurring expenses in maintaining the seizure of the vessel and Spears' purpose was to stanch those continuing expenses.

Accordingly, even if Spears did not, in fact, have authority

---

has provided a memorandum from the supervising deputy U.S. Marshal for the Southern District of Texas, dated *after* the relevant events in this action, entitled New Admiralty Procedures for Southern District of Texas.  One of the items listed as a "new" procedure states that a court order will be required to release a vessel unless the original seizure order states that the vessel can be released upon written authorization from the seizing attorney.  The obvious negative implication from this is that the prior procedure allowed release, without a court order, upon the written authorization of the seizing attorney.

[11]That rule states, in pertinent part, as follows.

> (c) *Release by Consent or Stipulation;  Order of Court or Clerk;  Costs.*  Any vessel ... in the custody of the marshal ... having the warrant may be released forthwith upon the marshal's acceptance and approval of a stipulation, bond, or other security, *signed by the party on whose behalf the property is detained or the party's attorney* and expressly authorizing such release, if all costs and charges of the court and its officers shall have first been paid.

Rule E(5)(c) (emphasis added).

10

to release the vessel without a court order, which we do not now decide, we conclude that the district court clearly erred in finding that Spears acted in bad faith. Spears' argument supporting his action was reasonable and he had no bad faith intention to interfere with the jurisdiction of the court. Moreover, as the intervenors rearrested the vessel shortly thereafter, Spears did not actually harm the jurisdiction of the court. Under these circumstances, we conclude that the magistrate judge did not exercise the mandated restraint before assessing sanctions under the inherent power of the court. *Reed,* 16 F.3d at 84.

III. CONCLUSION

For the reasons stated above, the judgment of the district court is REVERSED.