EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
The district court below not only appointed plaintiffs’ attorney Ward to prosecute the court’s sanctions motion at the same time that Ward had his own private sanctions motion pending before the court (as well as related civil proceedings), but also engaged in extensive ex parte communications with Ward, ordered Ward not to disclose the substance of the communications with the defendants, and allowed Ward to testify as a fact witness and cross-examine other witnesses during the proceedings.[1] Using these unprecedented procedures and operating under its “inherent powers,” the district court imposed serious criminal fines and quasi-criminal disbarment, suspension, and reprimand sanctions on the defendants.
In evaluating these proceedings, the majority correctly concludes that the procedures failed to comport with basic principles of due process with respect to the criminal fines imposed on defendants CNA and Tone. Ironically, notwithstanding this conclusion, the majority holds that the same defective procedures did not violate due process with respect to the quasi-criminal disbarment, suspension, and reprimand of defendants Burns, Bieck, Wright, Fiedler, Burnthorn, and Berry. I respectfully disagree. The majority cites no case where inherent powers sanctions have been imposed or upheld under similar procedures, and I can find none. Indeed, a thorough review of our ease law demonstrates that we have reversed and vacated disbarment, suspension, and reprimand sanctions in far less troubling circumstances than those posed by the case at hand.[2] *242 Moreover, the Supreme Court’s decisions in International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 837-38, 114 S.Ct. 2552, 2563-64, 129 L.Ed.2d 642 (1994), and Young v. United States, 481 U.S. 787, 800, 107 S.Ct. 2124, 2133-34, 95 L.Ed.2d 740 (1987), as well as our own warnings in NASCO, Inc. v. Calcasieu Television & Radio, Inc., 894 F.2d 696, 707-08 (5th Cir.1990), aff'd sub nom. Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), mandate a reversal of the quasi-criminal sanctions imposed under such defective procedures.
Accordingly, I dissent from the majority’s affirmance of the suspension of attorney-defendant Berry. I concur in the judgment reversing the disbarment, suspension, and reprimand of Wright, Burns, Bieck, Fiedler, and Burnthorn, as well the majority’s reversal of the criminal fines imposed on CNA and Tone; I disagree, however, with the majority’s approval of the unprecedented procedures that the district court used to impose the suspension, disbarment, and reprimand sanctions under its inherent powers.
I
“A court must, of course, exercise caution in invoking its inherent powers, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.” See NASCO, 501 U.S. at 50, 111 S.Ct. at 2136. Moreover, “the threshold for the use of inherent power sanctions is high.” Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir.1995). “Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.” Bagwell, 512 U.S. at 831, 114 S.Ct. at 2559; see also Mackler Productions, Inc. v. Cohen, 146 F.3d 126, 127-29 (2d Cir.1998) (“A troublesome aspect of a trial court’s power to impose sanctions ... pursuant to the eourt’s inherent power ... is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed. The absence of limitations and procedures can lead to unfairness or abuse.”) (internal citation omitted). In addition, “[t]o the extent that such contempts take on a punitive character [] and are not justified by other considerations central to the contempt power, criminal procedural protections may be in order.” Id. at 831, 114 S.Ct. 2552, 114 S.Ct. at 2559.
Significantly, both the Supreme Court and our own court have emphasized that disbarment is a punishment with punitive characteristics. See, e.g., In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968) (“Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer.”); Dailey v. Vought Aircraft Co., 141 F.3d 224, 229 (5th Cir.1998) (“Although disbarment is intended to protect the public, it is a ‘punishment or penalty imposed on the lawyer.’ ”) (quoting In re Ruffalo, 390 U.S. at 550, 88 S.Ct. at 1226). We have further concluded that disbarment proceedings are adversarial and quasi-criminal in nature. See In re Thalheim, 853 F.2d 383, 388 (5th Cir.1988) (“Attorney disbarment and suspension cases are quasi-criminal in character.”); In re Medrano, 956 F.2d 101, 102 (5th Cir.1992) (“A disbarment proceeding is adversarial and quasi-criminal in nature and the moving party bears the burden of proving all elements of a violation.”); see also In re Ruffalo, 390 U.S. at 551, 88 S.Ct. at 1226 (“These are adversary proceedings of a quasi-criminal nature.”). Consequently, while disbarment proceedings are “quasi-criminal,” rather than purely criminal, we have consistently rejected claims that civil procedural protections are adequate to meet due process requirements. See, e.g., In re Medrano, 956 F.2d at 102 (rejecting the district court’s *243 application of the preponderance of the evidence standard in a disbarment proceeding); United States v. Brown, 72 F.3d 25, 29 (5th Cir.1995) (“Because attorney suspension is a quasi-criminal punishment in character, any disciplinary rules used to impose this sanction on attorneys must be strictly construed resolving ambiguities in favor of the person charged.”).
Furthermore, we must closely scrutinize the district court’s use of its inherent powers to insure that the court exercised such powers with restraint and discretion. “Indeed, the Supreme Court has cautioned that ‘[b]e-cause of their very potency, inherent powers must be exercised with restraint and discretion.’” Chaves, 47 F.3d at 156 (quoting NASCO, 501 U.S. at 44, 111 S.Ct. at 2132); see also Natural Gas Pipeline Co. v. Energy Gathering, Inc., 2 F.3d 1397, 1406-07 (5th Cir.1993) (inherent powers must be exercised with restraint and discretion and only sparingly so). “Disbarment being the very serious business that it is, ample opportunity must be afforded to show cause why an accused practitioner should not be disbarred.” Theard v. United States, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276-77, 1 L.Ed.2d 1342 (1957); see also Ex parte Robinson, 86 U.S. (19 Wall.) 505, 511, 22 L.Ed. 205 (1873) (“Before a judgment disbarring an attorney is rendered he should have ... ample opportunity of explanation and defence.”). At rock bottom, “ample opportunity” to present a defense to a charge of disbarment must include an impartial decision maker and, if one is needed, a disinterested prosecutor. See, e.g., Bagwell, 512 U.S. at 831-38,114 S.Ct. at 2559-64; Young, 481 U.S. at 800-06, 107 S.Ct. 2124; NASCO, 894 F.2d at 707-08.
II
A
As the Supreme Court explained in Bag-well, “[the] fusion of legislative, executive, and judicial powers [in inherent powers proceedings] summons forth ... the prospect of the most tyrannical licentiousness” and is “uniquely [] liable to abuse.” Bagwell, 512 at 831-33, 114 S.Ct. at 2559-61. Accordingly, our jurisprudence requires “progressively greater procedural protections” when sanctions have punitive characteristics (as they do here) and where the conduct giving rise to the sanctions occurs outside the presence of the court and requires elaborate factfinding (as it did here). See id. The Supreme Court explained that a district court must be particularly circumspect in exercising its inherent powers when the proceedings require elaborate factfinding:
For a discrete category of indirect contempt, however, civil procedural protections may be insufficient. Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding. Cf. Green, 356 U.S. at 217 n. 33, 78 S.Ct. at 660 n. 33 (Black, J. dissenting) (citation omitted) (“Alleged contempts committed beyond the court’s presence where the judge has no personal knowledge of the material facts are especially suited for trial by jury. A hearing must be held, witnesses must be called, and evidence taken in any event. And often ... crucial facts are in close dispute”). Such contempts do not obstruct the court’s ability to adjudicate the proceedings before it, and the risk of erroneous deprivation from the lack of a neutral fact-finder may be substantial.
Bagwell, 512 U.S. at 833-34, 114 S.Ct. at 2560-61 (alteration in original).
Here, as the majority’s recitation of the facts demonstrates, the district court was required to make elaborate and detailed factual findings after the presentation of conflicting testimony at the sanctions proceedings (including the testimony of the court’s attorney Ward). The conduct giving rise to the sanctions stemmed from a series of complicated, out-of-court, off-the-record, and much disputed events that occurred during settlement negotiations. In fact, the district court conceded that prior to the sanction proceedings, “the court knew none of the facts.” The district court attempted to justify the appointment of plaintiffs’ attorney Ward by explaining that “the appointment of an attorney was even more important because the court had absolutely no knowledge of the factual basis for any charges for sane- *244 tions.”[3] Accordingly, under Bagwell, these sanction proceedings were the precise type of situation where the “risk of erroneous deprivation from the lack of a neutral factfinder” was substantial.[4] See id. Moreover, as I discuss below, where the district court appointed a self-interested prosecutor who continued to represent the private plaintiffs, communicated ex parte (and secretly) with the court-appointed prosecutor, and allowed the prosecutor to testify as a fact witness during the inherent powers proceedings, “the mandated restraint [was] lacking.” Chaves, 47 F.3d at 156.
B
In Young v. United States, under facts decidedly similar to the case at hand, the Supreme Court explained that “the appointment of counsel for an interested party to bring the contempt prosecution ... at a minimum ereate[s] opportunities for conflicts to arise, and create[s] at least the appearance of impropriety.” Young, 481 U.S. at 806, 107 S.Ct. at 2137. The Court explicitly rejected the argument, similar to the one made by the district court and accepted by the majority, see Op. at 234 n.23, that appointment of opposing counsel was justified because that person was most familiar with the underlying events. The Court explained that: Young, 481 U.S. at 806 n. 17, 107 S.Ct. at 2137 n. 17. In unambiguous terms, the Court condemned the practice of appointing a self-interested prosecutor in inherent power contempt proceedings: “If a Justice Department attorney pursued a contempt prosecution for violation of an injunction benefiting any client of that attorney involved in the underlying litigation, that attorney would be open to a charge of committing a felony.... Furthermore, such conduct would violate the ABA ethical provisions, since the attorney could not discharge the obligation of undivided loyalty to both clients where both have a direct interest.” Young, 481 U.S. at 805, 107 S.Ct. at 2136. The rule and principles set out in Young, particularly in light of Ward’s pending motion for private sanctions, his extensive ex parte communications with the court, and his testimony as a fact witness, are directly applicable to the ease at hand.
The potential for misconduct that is created by the appointment of an interested prosecutor is not outweighed by the fact that counsel for the beneficiary of the court order may often be most familiar with the allegedly contumacious conduct. That familiarity may be put to use in assisting a disinterested prosecutor in pursuing the contempt action, but cannot justify permitting counsel for the private party to be in control of the prosecution.
The majority attempts to “escape the mandate of Young,” see Op. at 233, by asserting that our decision in NASCO, where we allowed the use of opposing counsel to present evidence on the amount of attorneys’ fees, is “largely dispositive” with regard to Ward’s service as prosecutor. See Op. at 231. I disagree. First, in attempting to draw a parallel to the case at hand, the majority asserts that “the district court in NASCO relied primarily on the extensive factual development of the monetary sanctions proceeding in finding Gray disbarrable.” See Op. at 232 n.19. The record, both here and in NASCO, completely refutes this assertion. Indeed, in Judge Scott’s own opinion in this case, he explicitly states that in NASCO the court did not have to rely on any factual development because the court already knew all of the facts before the sanction proceedings started: “This was a more serious case than NASCO v. Chambers where the court knew all the facts before trial.”[5] Judge *245 Scott then explicitly distinguished the ease at hand from NASCO, explaining that “[i]n this case the court knew none of the facts .... [and] had absolutely no knowledge of the factual basis for any charges for sanctions.”
Our own opinion in NASCO illuminates the fundamental distinction between this case, where the sanctionable conduct occurred out of court and required elaborate factfinding, and NASCO, where it did not: “Since the misconduct alleged occurred in the court, there was no need for elaborate proof of the facts, and the parties offered none.” NAS-CO, 894 F.2d at 707; see also id. at 708 (“There is no dispute that the appellants did everything the district court said they did.”). Thus, contrary to the majority’s conclusion, NASCO cannot be read as support for the district court’s appointment of an interested opposing counsel who simultaneously testifies as a fact witness to the much-disputed, out-of-court conduct of which the judge has no personal knowledge.
Additionally, in upholding the attorney suspensions in NASCO, we specifically distinguished Young on the grounds that “the danger present in Young, that private counsel would be overzealous in the contempt proceedings in an effort to further the interest of his client” was not present. See NAS-CO, 894 F.2d at 707. We explained that “[t]he arguments of counsel at the hearing were devoted entirely to the issue of monetary sanctions [and][t]he court relied on its own research ... in determining the propriety of nonmonetary sanctions [i.e., suspension and disbarment].” NASCO, 894 F.2d at 707-08. Because the plaintiffs attorney in NASCO played such a limited role in the sanction proceedings, we held that “[t]he court thus avoided placing NASCO’s counsel in the role of prosecutor for the disbarment proceedings.” Id. at 708. Here, we cannot make the same conclusion. Indeed, if there is any case to which the rule in Young applies, it is this one.
First, Ward undoubtedly had an interest in the court’s sanctions proceedings because he continued to represent the plaintiffs in related civil proceedings and had his own private motion for sanctions pending before the court at the same time. The majority states that the case here “arguably presents a far less problematic scenario” than in NASCO because Ward’s private motion was merely pending during the course of his investigation and testimony for the court’s sanctions motion. See Op. at 233 n.21.1 cannot agree that this presents a “far less problematic scenario.” In NASCO, the opposing counsel’s testimony related only to the appropriate amount of attorneys’ fees to award; the proceedings did not involve an interested private party arguing the sanctions motion for the district court while he had his own private motion, as well as related civil proceedings, pending before the court. The fundamental problem that the Supreme Court recognized with the appointment of an interested party to prosecute a serious contempt is not diminished simply because the interested party has not yet argued his private motion. Young prohibits the inherent conflict of interest, and more importantly, the appearance of impropriety, that arises when an interested private party prosecutes the contempts. See Young, 481 U.S. at 807, 107 S.Ct. at 2137 (“Regardless of whether the appointment of private counsel in this case resulted in any prosecutorial impropriety (an issue on which we express no opinion), that appointment illustrates the potential for private interest to influence the discharge of public duty.”).
Moreover, the district court compounded its error and the appearance of impropriety by having extensive ex parte communications with Ward. See Model Code of Judicial CONDUCT Canon 3(B)(7) (1990) (“A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding....”). Although the majority states that the ex-parte contacts in this case were limited “to the most de minim-is and harmless procedural matters,” see Op. at 235, the record belies this contention. The district court’s own opinion documents several of the ex parte communications between Ward and the court:
*246 Thereafter, we had several long conversations with Mr. Ward trying to determine what action should be taken addressing this matter and emphasizing the fact that the court knew absolutely nothing of the alleged fraud in the settlements....
Naturally we called Ward on several occasions but he knew of no facts to support his allegations of fraud.
We both felt that considering the experience and character of the attorneys in this suit, a chance should be given to those who were not involved to clear themselves without being openly accused and forced to defend themselves in court.
See Crowe v. Smith, No. 92-2164, slip. op. at 32-33 (W.D.La. July 25, 1996).
Moreover, the district court gave Ward explicit instructions not to disclose the nature of the ex parte communications to the defendants and denied several motions by the defendants seeking to be apprised of the nature of these communications. In light of the three hats worn by plaintiffs’ attorney Ward (i.e., prosecutor, fact witness, and private attorney for the opposing party), the district court’s secret ex parte communications with the private prosecutor create an overwhelming appearance of impropriety. Cf Bagwell, 512 U.S. at 833-34, 114 S.Ct. at 2560-61 (setting forth the circumstances under which the risk of erroneous deprivation from the lack of a neutral factfinder is substantial). The majority attempts to avoid this conclusion by analyzing the ex parte communications independently, as if they did not occur in the context of the inherent powers contempt proceeding where Ward was acting as the prosecutor as well as testifying before the court. See Op. at 233 (“With the exception of the issues of attorney testimony and ex parte contacts discussed separately below, we can find no serious deviation from the procedure expressly approved in NASCO — ”). Because inherent powers “must be exercised with restraint and discretion,” NASCO, 501 U.S. at 44, 111 S.Ct. at 2132, the majority errs in failing to consider the ex parte communications in the appropriate context and in conjunction with the other procedural deficiencies.
The majority’s citation to the “extensive tradition of affording little or no weight to isolated ex parte contacts,” see Op. at 234-235, n.24 & n.25, provides no support for approving the extensive and secret ex parte communications in the case at hand. Significantly, none of the cases cited by the majority involve the district court’s exercise of its inherent powers. Furthermore, none of the cases involve ex parte communications with the attorney acting as a private prosecutor for the court; none of the cases involve ex parte communications with an attorney who had a private sanctions motion and civil claims pending before the court; and none of the cases include ex parte communications with an attorney who also testified as a major fact-witness in the proceedings.
Finally, although Ward prosecuted the sanctions on behalf of the court, he also testified as a fact-witness during the disbarment proceedings. For obvious reasons, the Rules of Professional Conduct prohibit attorney testimony under most circumstances. See Louisiana Rules of Professional Conduct Rule 3.7(a) (1995 ed.) (“A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness-”). Once again, the majority attempts to analyze this error independently, instead of in the context of Young, Bagwell, and NASCO. The majority cites a “wide swath” of district court and bankruptcy court cases for the general proposition that the rule barring attorney testimony does not apply when testimony is “made to a judge, not a jury.” See Op. at 38-40. It is significant to note, however, that none of the eases cited by the majority involve a testifying attorney who is also the prosecutor appointed by the court. The same fear that leads us to bar attorney testimony in jury trials — ie. that the factfinder (the jury) would tend to believe the testifying attorney more than an ordinary witness — applies when the testifying attorney represents the factfinder (here, the court) rather than (as normal) a private party. As the Supreme Court noted in Bag-well, “the risk of erroneous deprivation from the lack of a neutral factfinder” is greatest when, like here, the judge has no personal knowledge of the material facts that are the basis for the sanctions. See Bagwell, 512 *247 U.S. at 834, 114 S.Ct. at 2560-61; see also id. at 831-32, 114 S.Ct. at 2559 (“Contumacy often strikes at the most vulnerable and human qualities of a judge’s temperament, and it’s fusion of legislative, executive, and judicial powers summons forth ... the prospect of the most tyrannical licentiousness.”) (internal quotations and citations omitted) (alterations in original).
Ill
After a thorough search of the relevant case law, I have found no case in which a district court used procedures like the ones here to impose inherent powers sanctions, let alone where such procedures were upheld on appeal. Particularly where the district court appoints the interested opposing attorney to prosecute the contempt, engages in secret ex parie communications with the attorney, and allows the attorney to testify as a fact witness, this court errs in condoning the district court’s use of its inherent powers. See NAS-CO, 501 U.S,. at 44, 111 S.Ct. at 2132 (“Because of their very potency, inherent powers must be exercised with restraint and discretion.”). In light of these unprecedented and unparalleled procedures, I conclude that the district court failed to provide due process in imposing the disbarment, suspension, and reprimand sanctions. In direct contradiction of our warning in NASCO, the district court here “plac[ed] [plaintiffs] counsel in the role of prosecutor for the disbarment proceedings.” NASCO, 894 F.2d at 708. Accordingly, I respectfully dissent from the majority’s affirmance of the suspension of attorney-defendant Berry and its approval of the proceedings used in this case.

. See, e.g., Dailey v. Vought Aircraft Co., 141 F.3d 224, 229 (5th Cir.1998) (reversing and vacating attorney disbarment because the district court failed to provide adequate notice and opportunity to be heard); Scaife v. Associated Air Center Inc., 100 F.3d 406, 412 (5th Cir. 1996) (reversing and vacating attorney reprimand sanction because it was overbroad and excessive in relation to the alleged conduct); United States v. Brown, 72 F.3d 25, 29 (5th Cir.1995) (reversing and dismissing attorney suspension sanction because disciplinary rule must be strictly construed resolving ambiguities in favor of the person charged); Elliott v. Tilton, 64 F,3d 213, 217 (5th Cir. 1995) (reversing and remanding attorney sanction because the district courl failed to make a finding of bad faith); Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir.1995) (reversing attorney sanction because the magistrate judge failed to exercise the mandated restraint before assessing sanctions under the inherent power of the court); Resolution Trust Corp. v. Bright, 6 F.3d 336, 340-41 (5th Cir.1993) (reversing attorney disbarment because the record did not support the district court's bad faith finding); In re Medrano, 956 F.2d 101, 103-05 (5th Cir.1992) (reversing attorney disbarment because the district court applied the preponderance of the evidence rather than clear and convincing evidence standard); Cun *242 ningham v. Ayers, 921 F.2d 585, 586 (5th Cir. 1991) (reversing bankruptcy court's decision to suspend attorney from practice because "a reasonable person would have a reasonable basis for questioning [the judge’s] impartiality in the contempt proceeding”); in re Thalheim, 853 F.2d 383, 388 (5th Cir.1988) (reversing attorney suspension because the district court violated due process by failing to follow its own requirements concerning proper disciplinary proceedings).

. As I discuss infra at Part II.B, it is precisely because the district court had no knowledge of the factual basis for any sanctions that the extended ex parte communications with Ward, as well as Ward’s testimony as a factual witness at the proceedings, violated the strictures of Young, Bagwell, and NASCO.

. Although the majority concedes that "an initial impression [of] Bagwell appears to mandate" a reversal of the district court's faulty procedures for the disbarment proceedings, see Op. at 229, the majority nonetheless approves the very procedures that it concludes violate due process for the criminal fines.

.As the majority notes, Judge Scott was also the presiding judge in the sanctions proceedings in NASCO; thus, his own concession that he knew all of the facts before the sanctions proceedings in NASCO (and that he knew none of them in the *245 case at hand) is more persuasive than the majority’s assertion to the contrary.