## In re FIRST CITY BANCOR-PORATION OF TEXAS, INC., Debtor.

### Harvey Greenfield, et al., Appellants,

v.

### First City Bancorporation of Texas, Inc., et al., Appellees.

### No. 392–39474–HCA–11.
### Civ.A. No. 3:97–CV–2304–L.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 28, 2001.

---

Harold C. Abramson, Dallas, TX, pro se.

Harvey Greenfield, Attorney at Law, Law Office of Harvey Greenfield, New York City, for appellants.

Kenneth Edwin Carroll, Attorney at Law, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for appellee.

### MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

This is an appeal from an Order on Remand of Greenfield Sanctions Ruling ("Order on Remand"), entered June 5, 1997, by the United States Bankruptcy Judge. The order imposed monetary sanctions in the amount of $25,000 against Harvey Greenfield ("Greenfield"), Plaintiff's counsel, for his conduct before the bankruptcy court. After careful consideration of the briefs, supporting evidence,[1] and applicable law, the order of the bankruptcy court is **affirmed**.

### I. Factual and Procedural Background

Greenfield represents the "Class 8 Claimants," plaintiffs in a class action securities lawsuit filed in 1990 against First City Bancorporation of Texas, Inc. ("First City"), its officers and directors, and Donaldson, Lufkin & Jenrette. A $20 million

settlement was reached in 1992, but nullified when First City was taken over by federal regulators and then filed a Chapter 11 bankruptcy petition. Plaintiffs' claims were pursued in bankruptcy court, resulting in a $10 million settlement (with First City alone) incorporated in the Joint Plan of Reorganization.

Appellees complained about Greenfield's conduct before the bankruptcy court and filed a motion to sanction him. The triggering event apparently was Greenfield's conduct at a July 13, 1995 deposition of A. Robert Abboud ("Abboud," a director of First City and claimant in bankruptcy for indemnification of legal expenses). Appellees contend that Greenfield exceeded the scope of the deposition and an order by the bankruptcy judge, in an improper effort to pursue the securities lawsuit stayed by First City's bankruptcy filing. When Abboud's attorney objected to the scope of Greenfield's questions, Greenfield allegedly made several abusive and threatening remarks directed at both Abboud and his attorney.

The complaints, however, were not limited to the Abboud deposition and encompassed Greenfield's conduct well before that event. Greenfield allegedly made frequent remarks—in open court, in filings, or in other communications with the parties, their counsel or third parties—that denigrated participants in the bankruptcy proceeding and other parties, accused them of illegal or unethical behavior without a basis in fact, and threatened participants. His remarks were characterized as not only often completely irrelevant to the issues at hand but also offensive and abusive. The court notes a partial list of his

---

1. As discussed below, not all of the appropriate evidence is in the record. Because the critical factual allegations are uncontested, however, the court relies on the representations in the briefs as to those facts.

alleged remarks to provide a sense of the conduct in question:

- characterizing other attorneys, including an Assistant United States Attorney, as "stooges," "puppet," a "weak pussyfooting 'deadhead' " who "had been 'dead' mentally for ten years," "various incompetents," "inept," "clunks," "falling all over themselves, wasting endless hours," "a bunch of starving slobs," an "underling" who graduated from a 29th-tier law school, and "in mortal fear of taking a lie detector test";
- calling the chairman of First City a "hayseed" and "washed-up has been" and other directors "scoundrels";
- referring to attorneys as having been fired by their former firms;
- referring on one law firm, Carrington, Coleman, Sloman & Blumenthal, L.L.P., as "stooges" of another, Vinson & Elkins, L.L.P.;
- referring to the work of other attorneys as "garbage," demonstrating "legal incompetence," and involving "ludicrous additional time and expenses";
- asserting that Vinson & Elkins was using First City as a "private piggy-bank";
- at the Abboud deposition, characterizing Abboud's lawyer as a "criminal defense lawyer" (apparently to imply that Abboud was a criminal) and stating that "I am going to have Mr. Abboud indicted";

- alleging fraud, cover-ups, payoffs, and bribes with (apparently) little if any evidence to support the characterizations; and
- referring to extraneous and prejudicial matters, such as a "scandal" at a Houston hospital that was another client of one of the opposing attorneys.[2]

The bankruptcy judge made several attempts to curb this behavior by the imposition of lesser sanctions, including oral and written admonitions and warnings. Those lesser sanctions apparently did not succeed, as Greenfield continued a pattern of contumacious conduct.

After briefs were filed concerning the motion for sanctions, the bankruptcy court held an evidentiary hearing on November 16, 1995, and then made findings of fact and conclusions of law which were documented in the bankruptcy court's Order Barring Harvey Greenfield from Practicing in This Bankruptcy Court and Imposing Monetary Sanctions ("First Order"), dated December 19, 1995. The order imposed sanctions of $22,500 and barred Greenfield from appearing or filing pleadings in the Bankruptcy Court for the Northern District of Texas without the court's permission. Among the reasons given by the court for the imposition of sanctions was that prior sanctions, including those imposed in *Krim v. BancTexas Group, Inc.,* No. 3:89–CV–0369–D (N.D.Tex. Oct. 11, 1995), had been ineffective.

---

2. Although not directly relevant to Greenfield's behavior in *this* case, Appellees note that he has continued such behavior in another related case, including referring to the bankruptcy judge in this case as "a rubber stamp" for defendants; a voice-mail referring to foreign-born staff for opposing counsel as "people and secretaries and other places who can't speak or understand English," "foreign garbage" that you should "put in the garbage can" and "incinerate," "greaseballs from the Far East," and "illiterates"; and asking op-

posing counsel's secretary whether another attorney was "any good at sex." The bankruptcy judge in that other case concluded that this behavior precluded Greenfield from providing adequate representation of the proposed class. Greenfield's behavior in that other case was brought to the attention of the bankruptcy judge in this case before he issued the order now appealed. The court concludes, however, that the bankruptcy judge did not base his ruling, and this court does not base its ruling today, on that behavior.

Greenfield appealed the December 19, 1995 order. While his appeal was pending, the sanctions imposed in *Krim* were reversed by the Fifth Circuit. *Krim v. BancTexas Group, Inc.,* 99 F.3d 775 (5th Cir.1996). Although the *Krim* sanctions were imposed for a different reason,[3] the district court concluded that the bankruptcy court in this case imposed sanctions in part because "lesser sanctions" were ineffective. *Krim, et al. v. Official Committee of Unsecured Creditors, et al.,* No. 3:96–CV–0751–X (N.D.Tex. Jan. 30, 1997). Accordingly, the district court remanded to the bankruptcy court for further consideration in light of the Fifth Circuit's opinion. *Id.*

On remand, the bankruptcy court conducted another hearing on May 15, 1997 and "readopted, reconfirmed, and revitalized" the First Order by issuance of the Order on Remand on June 5, 1997. The Order on Remand modified the First Order by: 1) deleting all references to the *Krim* case, because it was immaterial to the original ruling; 2) removing the bar against Greenfield appearing or filing pleadings in the bankruptcy court without the court's permission; and 3) increasing the monetary sanctions from $22,500 to $25,000. Appellants filed their notice of appeal one week later, on June 12, 1997, pursuant to 28 U.S.C. § 158 and Fed. R. Bankr.P. 8001.

The record on appeal in this matter as originally filed included the notice of appeal, the parties' *designations* of items to be included, the actual order being appealed, and the bankruptcy court's docket sheet; it did *not* include the actual documents designated by the parties. The court's order of February 15, 2001 directed the parties to file copies of the designated documents with the clerk of the bankruptcy court by February 23, 2001. To date, nothing has been received from Appellants.[4] Appellees filed a response directly with this court, containing copies of selected items and noting that all of the items they designated were already before the court as part of the record on appeal in *Krim, et al. v. Official Committee of Unsecured Creditors, et al.,* No. 3:96–CV–0751–X (N.D.Tex. Jan. 30, 1997). The record on appeal in that earlier case, however, is no longer available.

Given the volume of documents involved, and because the facts that they document are apparently undisputed, the court will rely on the representations in the briefs and the selected documents filed. The court will not require that a second copy of the documents designated for appeal be filed. The court advises the parties for future reference, however, that except in extraordinary circumstances, the court cannot consider any evidence not part of the record. Accordingly, all documents designated for the record on appeal must be provided and made part of the official record for *that* appeal. The fact that documents already were submitted to the court as part of a related bankruptcy appeal is of little help if, for example, the

**3.** Those sanctions were not imposed for discourteous and uncivil conduct, as occurred in this case. The *Krim* sanctions were based on Fed.R.Civ.P. 11 and related to complaints filed by Greenfield without the specificity required by Fed.R.Civ.P. 9(b) for allegations of fraud.

**4.** That alone, given the warning in the court's order of February 15, 2001, would justify dismissal of the appeal. The court concludes that it is more appropriate under the circumstances to base its rulings on the merits of the appeal. Appellants' failure to provide the documents they designated on appeal, if anything, further supports the court's conclusion that the representations as to Greenfield's conduct are not in dispute.

order of the district court is appealed to the United States Court of Appeals.

## II. *Standard of Review*

■■■ As this court functions as an appellate court when reviewing a bankruptcy court's decision, the same standards of review generally applied in federal court appeals also apply to this court. *In re Webb,* 954 F.2d 1102, 1103–04 (5th Cir.1992). While the bankruptcy court's conclusions of law are reviewed de novo, *In re Pro-Snax Distribs., Inc.,* 157 F.3d 414, 420 (5th Cir.1998), its findings of fact are not to be set aside unless clearly erroneous. *In re Webb,* 954 F.2d at 1104. The imposition of sanctions under the court's inherent powers is reviewed for an abuse of discretion. *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir.1995). "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* A court, however, must exercise restraint in considering the use of its inherent powers to impose sanctions. *Id.*

## III. *Analysis*

■■ Appellants appear to advance several interrelated arguments that the sanctions were improper: 1) Greenfield's conduct was not as extreme as some other cases in which sanctions were imposed; 2) his tactics were necessary and/or effective in achieving results; 3) his tactics were justified because of the fraud visited upon his clients; 4) motions for sanctions are typically tactical in nature and should not be granted; 5) the motion for sanctions in this case was an attempt at retribution because of his success; 6) those about whom he made remarks, and who complained about his conduct, were guilty of wrongdoing; 7) his remarks have a basis in fact; and 8) the Bankruptcy Judge has made so many other errors in the case

that it demonstrates he either was unaware of the evidence in the case or chose to ignore it. The court notes that Appellants apparently do not dispute the statements attributed to Greenfield, and concludes that none of these arguments comes close to supporting a finding that the imposition of sanctions in this case was an abuse of discretion.

Standards of litigation conduct for the Northern District of Texas were established in *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n,* 121 F.R.D. 284 (N.D.Tex.1988) (*en banc*). Several of the standards announced in *Dondi* are relevant to the complaints about Greenfield's conduct:

- "A lawyer owes, to opposing counsel, a duty of courtesy . . . ."
- "Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility . . . ."
- "A client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct."
- "[I]ll feeling should not influence a lawyer's conduct, attitude, or demeanor towards opposing lawyers."
- "Effective advocacy does not require antagonistic or obnoxious behavior . . . ."

*Id.* at 287–88.

■■■ It is evident that the alleged conduct violates these standards. Appellants do not argue that the conduct, which is well documented, did not occur, only that it does not justify the sanctions imposed. Most of those arguments are irrelevant to the issue at hand. Lawyers engaging in such behavior almost inevitably believe that it makes them more effective. The *Dondi* court, however, explicitly rejected the idea that lawyers cannot be effective advocates without engaging in such behavior. *Id.* at 288. The *Dondi* court also

noted that "[i]n fulfilling his or her primary duty to the client, a lawyer must be very conscious of the *broader duty* to the judicial system that serves both attorney and client." *Id.* at 287. Even if "antagonistic or obnoxious behavior" would benefit one's client, that increase in the advocate's effectiveness must be sacrificed for the good of the judicial system as a whole. "Those litigators who persist in viewing themselves solely as combatants, or who perceive that they are retained to win at all costs without regard to fundamental principles of justice, will find that their conduct does not square with the practices we expect of them." *Id.* at 288. Effectiveness therefore cannot justify a violation of the *Dondi* standards.

■ The motives of those who file motions for sanctions, either in general or in this case, are also irrelevant to the court's determination. The determination, by the bankruptcy court and by this court, focuses only on whether Greenfield's conduct is sanctionable. If sanctions were sought for improper reasons, or if Appellees are guilty of wrongdoing in some fashion, those are separate issues which are not relevant to the question of sanctions and therefore are not before the court. What matters is whether the sanctions are appropriate, not what motivated the request for sanctions.

■ The court is not concerned with, and makes no determination as to, whether the remarks that are the object of the complaint are true. *Dondi* does not limit its standards for civility to comments that are demonstrably false. The underlying theme of *Dondi* is that attorneys should refrain from abusive remarks about matters that are irrelevant, and comment about relevant matters only in a civil manner. If opposing counsel's arguments are weak, they are to be challenged on the merits; the arguments can be character-ized as wrong or incorrect without referring to them as "garbage" or "legal incompetence" or referring to the attorneys are "various incompetents," "inept," or "clunks." Characterizing an attorney or firm as a "puppet" or "stooge" of another adds nothing to a determination of the merits of their arguments. Many of the alleged comments by Greenfield are classic *ad hominem* arguments that have no place in legal practice in this district. Even if every remark were absolutely true, they would still be objectionable under *Dondi.*

The only potentially valid argument raised by Appellants is that the level of the conduct in this case does not warrant the imposition of sanctions. The court rejects that argument. Comparisons to actions for which sanctions were imposed in *Dondi* and *Lelsz v. Kavanagh,* 137 F.R.D. 646 (N.D.Tex.1991) have little persuasive force. Greenfield's conduct was different than that cited by the court in those two cases, but those are only examples, not an exclusive list, of violations of the *Dondi* standards. As described above, there were numerous examples of abusive and offensive remarks, as well as frequent warnings from the court that continued behavior in this fashion would have consequences.

If anything, Appellants' brief provides further evidence of Greenfield's inability to conform to the standards expected in this district. In the briefs, he emphasizes that an opposing attorney attended Brooklyn Law School (Greenfield graduated from Harvard Law School) and offers the two schools' respective rankings by *U.S. News & World Report,* apparently as evidence that the other attorney is inferior in support of Greenfield's statement that the lawyer had been fired by another law firm. He also brings up what he characterizes as errors by the bankruptcy judge in other rulings, apparently as evidence that the judge's conclusions as to evidence are un-

trustworthy. Both of these remarks are arguably additional violations of the *Dondi* standards.

Greenfield in effect requests the court to reverse the bankruptcy court's order because, in response to shareholders (and prospective clients) being defrauded out of $400 million, his angry reaction was only natural. That argument misses the mark. Regardless of his anger, as a professional practicing in bankruptcy court, he should not have disregarded and ignored the instructions and directions of the bankruptcy judge. Having been given repeated warnings, he proceeded at his own risk. Lawyers practicing in this district are expected to control their anger. If Greenfield is unable to do so, the court strongly suggests that he enroll in an anger management course. Such anger and unprofessional conduct as shown by him in this case may be acceptable or even normal in other areas of the country, but it is not tolerated in the Northern District of Texas.

## IV. *Conclusion*

■ The court does not determine *de novo* the level of sanctions, if any, to be imposed, only whether the bankruptcy court abused its discretion. Based on the record, the court concludes that the bankruptcy court exercised considerable restraint before deciding to impose sanctions and in determining the appropriate sanctions, and that the bankruptcy court did not abuse its discretion.[5] The court therefore **affirms** the bankruptcy court's Order on Remand of Greenfield Sanctions Ruling.

---

5. The court concludes that the bankruptcy judge erred, if at all, on the side of patience and restraint. Under similar circumstances, this court might well have imposed sanctions at an earlier stage and in a greater amount.